# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BAXTER SENIOR LIVING, LLC, an Alaska limited liability company,<br><br>      Plaintiff,<br><br>      v.<br><br>MIDLAND STATES BANCORP, INC., an Illinois corporation, and MIDLAND STATES BANK, an Illinois corporation,<br><br>      Defendants. | Case No. 3:21-cv-00273-SLG |

## ORDER RE MOTION TO TRANSFER VENUE AND MOTION TO DISMISS

Before the Court at Docket 16 is *Defendants' Motion to Transfer Venue and Defendant Midland States Bancorp, Inc.'s Motion to Dismiss*. Plaintiff Baxter Senior Living, LLC responded in partial opposition at Docket 20, and Defendants replied at Docket 26. The Court finds that oral argument was not necessary to determine these motions.

## FACTUAL BACKGROUND

Plaintiff Baxter Senior Living, LLC ("Baxter") is an Alaska limited liability company with its principal place of business in Anchorage, Alaska.[1] Defendant Midland States Bancorp, Inc., a bank holding company, is an Illinois corporation

---

[1] Docket 6 at 2, ¶ 4 (Am. Compl.).

that is headquartered in Effingham, Illinois.[2] It is the parent company of Defendant Midland States Bank ("MSB"), an Illinois-chartered bank that is also headquartered in Effingham.[3] Defendants have no employees in Alaska; their employees are primarily located in Illinois and Missouri, and their executives reside "in or around Effingham, Illinois."[4]

On August 5, 2018, Baxter and Midland States Bank ("MSB") entered into a Construction Loan Agreement under which MSB extended Baxter a $20.1 million "bridge" loan to finance construction of a senior living facility in Anchorage, Alaska, while Baxter sought longer-term financing through a subsequent loan insured by the U.S. Department of Housing and Urban Development ("HUD").[5] The agreement was negotiated and executed remotely via email and phone; no MSB employees traveled to Alaska, and no Baxter employees traveled to Illinois.[6] During negotiation and execution, Baxter was represented by counsel in Anchorage, Alaska, and MSB was represented by counsel located in Franklin, Tennessee.[7] The transaction closed at Alyeska Title's Anchorage office,[8] and the

---

[2] Docket 16-2 at 1–2, ¶¶ 2–4 (Kantor Decl.).

[3] Docket 16-2 at 2, ¶¶ 3–4.

[4] Docket 16-2 at 2, ¶¶ 5–7.

[5] *See* Docket 6-1 at 16, § 4.38 (Construction Loan Agreement); Docket 6 at 3, 7, ¶¶ 7, 21.

[6] *See* Docket 16-2 at 2, ¶¶ 9–11; Docket 20-5 at 3, ¶ 9 (Wilcox Decl.).

[7] Docket 20-5 at 3, ¶¶ 9–10.

[8] Docket 20-5 at 3, ¶ 8.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 2 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 2 of 19

First National Bank Alaska ("FNBA") assisted MSB in completing its loan to Baxter.[9]

As relevant here, the Construction Loan Agreement provides that Baxter must pay MSB a $603,000 Exit Fee "[u]pon payoff of the Loan in full" in addition to a prepayment penalty if the loan was paid off prior to its maturity date, August 5, 2023.[10] However, that provision contains an exception:

> Such Exit Fee and Prepayment Penalty shall be waived if the Borrower refinances the Loan with Love Funding Corporation using an FHA mortgage insurance programs [sic]. In addition, if Love Funding Corporation is unable or unwilling to refinance the Loan, or a firm commitment for FHA mortgage insurance is not issued by HUD, then the Exit Fee will not be due.[11]

Love Funding Corporation is MSB's wholly owned HUD-lending subsidiary.[12] The Construction Loan Agreement also contains a choice-of-law section providing that the agreement, and its "validity, enforcement and interpretation, [is] governed by the Laws of the State of Illinois (without regard to any conflict of laws principles) and applicable United States federal law."[13]

---

[9] Docket 6 at 6, ¶ 18.

[10] Docket 6-1 at 15, § 4.28; *see also* Docket 6-1 at 33, 35 (defining "Exit Fee" and "Maturity Date").

[11] Docket 6-1 at 15, § 4.28.

[12] Docket 6 at 3, ¶ 8; Docket 16-2 at 2–3, ¶ 12.

[13] Docket 6-1 at 26, § 8.14.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 3 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 3 of 19

Baxter began operating the senior living facility in October 2019, shortly before the beginning of the COVID-19 pandemic.[14] It asserts that due to a lockdown on assisted living facilities in response to COVID-19, it was unable to reach 85% occupancy, preventing it from making a profit or qualifying to refinance its loan with HUD.[15]

In August 2020, MSB sold part of Love Funding's business to Dwight Capital LLC; Dwight Capital acquired Love Funding's loan origination platform, but MSB "otherwise retained Love Funding, including its loan servicing business."[16] According to Defendants, Love Funding's employees are "located in Washington, D.C., Colorado, Florida, Mississippi, Missouri, Kansas, Ohio, and Tennessee."[17] Love Funding's current Chief Executive Officer, Jeff Mefford, resides in southern Illinois and also serves as the President of MSB.[18]

On May 1, 2021, Baxter sold the senior living facility to Sabra Health Care Holdings III, LLC ("Sabra Health") and used the proceeds of the sale to pay off its loan with MSB in full.[19] In the days leading up to the sale, Baxter and MSB disputed

---

[14] Docket 6 at 4, ¶ 9.

[15] Docket 6 at 4, ¶ 10.

[16] Docket 16-2 at 3, ¶¶ 19–20; *see also* Docket 6 at 4, ¶ 11.

[17] Docket 16-2 at 3, ¶ 13.

[18] Docket 16-2 at 3, ¶ 14.

[19] Docket 6 at 10, ¶ 32; Docket 16-2 at 4, ¶¶ 23–24.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 4 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 4 of 19

whether the Exit Fee had come due.[20] Baxter ultimately paid the Exit Fee "under protest" due to concerns that a prolonged dispute would "prevent[] the closing of its sale to Sabra Health."[21]

## PROCEDURAL BACKGROUND

On October 22, 2021, Baxter informed MSB via a letter that it intended to file a lawsuit in the District of Alaska by the end of the year seeking the return of the Exit Fee unless MSB was interested in engaging in settlement negotiations.[22] On November 29, 2021, MSB's Associate General Counsel contacted Baxter's counsel asking to schedule a time to discuss the matter on December 2 or 3, 2021.[23] The parties' attorneys corresponded on December 2, 7, 14, and 21, 2021, exchanging various settlement offers, until settlement discussions broke down on December 21, 2021.[24]

While those discussions were still ongoing, MSB filed suit in Illinois state court on December 9, 2021, seeking a declaratory judgment stating that it was entitled to retain the Exit Fee.[25] Baxter and its counsel did not learn of the Illinois

---

[20] *See* Docket 6 at 11–12, ¶¶ 36, 38; Docket 16-2 at 4, ¶¶ 25–26.

[21] Docket 6 at 5, 10, ¶¶ 13, 32.

[22] Docket 20 at 4, ¶ 7; Docket 20-3 at 1 (Ex. 3). The letter included a draft copy of Baxter's complaint. *See* Docket 20-3 at 1–2.

[23] Docket 20 at 5, ¶ 9; Docket 25 at 3, ¶ 9 (Am. Bankston Decl.).

[24] Docket 25 at 3, ¶ 10.

[25] *See* Docket 16-2 at 7–12 (Ex. A).

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 5 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 5 of 19

action until they were served with a copy of the complaint on January 3, 2022.[26] On January 31, 2022, Baxter removed the case to the U.S. District Court for the Southern District of Illinois.[27]

Baxter, meanwhile, filed suit against Midland States Bancorp, Inc. in this Court on December 22, 2021, the day after the parties reached an impasse in their settlement negotiations.[28] Baxter later amended its complaint to add MSB as a defendant on March 4, 2022, explaining that it believed MSB to be a subsidiary of Midland State Bancorp, Inc. but could not locate an entity registered with the Illinois Secretary of State to conduct business under that name or a similar one.[29] It acknowledged that MSB is the proper defendant in this matter if MSB "has capacity to sue and be sued, and assets to pay any judgment entered in Baxter's favor."[30]

In its complaint, Baxter asserts that the Exit Fee was not due when it sold its facility because (1) Love Funding "became unable to refinance the loan" when its origination platform was sold to Dwight Capital; and (2) Love Funding "could not have refinanced the loan" regardless because Baxter was "nowhere close" to the occupancy requirements to qualify for a HUD-insured loan due to the impacts of

---

[26] Docket 20 at 5, ¶ 11; Docket 25 at 3–4, ¶¶ 11–13.

[27] *See* Notice of Removal, *Midland States Bank v. Baxter Senior Living, LLC*, Case No. 3:22-cv-00190-DWD (S.D. Ill. Jan. 31, 2022), ECF No. 1.

[28] Docket 1 (Compl.); Docket 25 at 3, ¶ 10.

[29] Docket 6 at 2–3, ¶ 6.

[30] Docket 6 at 3, ¶ 6.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 6 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 6 of 19

the COVID-19 pandemic.[31] Count I of the complaint alleges that Defendants breached the terms of the Construction Loan Agreement, including the implied covenant of good faith and fair dealing, by insisting upon collecting the Exit Fee; Count II alleges that Baxter's obligation to refinance its loan to avoid payment of the Exit Fee was "impossible or commercially impracticable"; and Count III alleges that Defendants violated Section 45.50.471(b)(14) of Alaska's Unfair Trade Practices Act ("UTPA"), which prohibits "representing that an agreement confers or involves rights, remedies, or obligations that it does not confer or involve, or that are prohibited by law."[32] Baxter seeks repayment of the Exit Fee in the amount of $603,000, "all damages flowing from Defendant's breach of the Parties' Construction Loan Agreement," attorney's fees and costs, treble damages for Defendants' alleged violation of the UTPA, and pre- and post-judgment interest "at the highest rate allowable under law."[33]

On March 21, 2022, Baxter filed a motion in the Illinois action seeking dismissal of the case or transfer to the District of Alaska.[34] Ten days later, on March 31, 2022, Midland filed the instant motion seeking: (1) transfer of venue to

---

[31] Docket 6 at 4, 9, ¶¶ 12, 29, 31.

[32] Docket 6 at 12–18.

[33] Docket 6 at 19.

[34] *See* Docket 19 (Defs.' Notice of Pl.'s Filing of Mot. to Dismiss or Transfer Venue); Defendant's Motion to Dismiss or, in the Alternative, to Stay Proceedings or Transfer Venue and Brief in Support, *Midland States Bank v. Baxter Senior Living, LLC*, Case No. 3:22-cv-00190-DWD (S.D. Ill. Jan. 31, 2022), ECF No. 21.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 7 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 7 of 19

the U.S. District Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1404(a); and (2) dismissal of Midland States Bancorp, Inc. under Federal Rule of Civil Procedure 12(b)(6).[35]

After the parties completed their briefing on the instant motion, on June 1, 2022, the Southern District of Illinois court issued an order dismissing MSB's declaratory judgment action without prejudice.[36] The court offered three reasons for its decision: (1) "avoid[ing] waste of judicial resources" and "the duplication of efforts" by ensuring that only one court will have to perform the venue transfer analysis; (2) "avoid[ing] the possibility of different outcomes in the two cases"; and (3) "discourag[ing] the misuse of declaratory judgment actions" in keeping with the Seventh Circuit's "preference for coercive actions over declaratory judgment actions and its rejection of the 'first-to-file' rule."[37] On the latter point, the court noted "the suspect timing of Midland's filing," cautioning that "[d]eclaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file."[38]

---

[35] Docket 16 at 1.

[36] *See Midland States Bank v. Baxter Senior Living, LLC*, Case No. 3:22-cv-00190-DWD, 2022 WL 1773770 (S.D. Ill. June 1, 2022); *see also* Docket 28 at 1 (Notice of Filing Mem. & Order).

[37] *Id.* at *2.

[38] *Id.* at *2–3 (quoting *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004)).

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 8 of 19

## LEGAL STANDARDS

### I.  Motion to Dismiss

To state a claim that survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a party's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[39]

### II.  Change of Venue

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." If venue would be appropriate in the transferee court, the district court must undergo an "individualized, case-by-case consideration of convenience and fairness" to determine whether to transfer the action.[40] The Ninth Circuit has identified ten nonexclusive factors that a district court may consider in its analysis:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to

---

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[40] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 9 of 19

Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 9 of 19

sources of proof; (9) whether a forum selection clause is present; and (10) the relevant public policy of the forum state, if any.[41]

The party seeking venue transfer "bears the burden of showing that the transfer is appropriate."[42]

No single factor among those listed above is dispositive, and a court may consider additional factors.[43] However, "unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed," particularly when the plaintiff chooses their home forum.[44] Moreover, venue transfer is generally inappropriate when "the transfer would merely shift rather than eliminate the inconvenience."[45]

---

[41] *Davis v. Prop. & Cas. Ins. Co. of Hartford*, Case No. 05-cv-00002-RRB, 2005 WL 1694083, at *2 (D. Alaska July 14, 2005) (citing *Jones*, 211 F.3d at 498–99).

[42] *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1058 (N.D. Cal. 2015).

[43] *See Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013); *see also Gwich'in Steering Comm. v. U.S. Dep't of the Interior*, Case No. 3:19-cv-00208-HRH, 2019 WL 4786951, at *2 (D. Alaska Sept. 30, 2019).

[44] *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded plaintiff's choice of forum . . . ."); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."); *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1112 (9th Cir. 2020) ("A plaintiff's choice of forum—particularly a plaintiff's 'home forum' is entitled to considerable deference." (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015))); *Geneva Woods Pharmacy, Inc. v. RoigWest, Inc.*, Case No. 3:08-cv-00229-TMB, 2009 WL 10671502, at *3 (D. Alaska July 9, 2009) ("[A] plaintiff's choice of forum is entitled to great deference—especially when it has chosen its home forum . . . .").

[45] *Decker Coal Co.*, 805 F.2d at 843.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 10 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 10 of 19

**DISCUSSION**

**I.      Motion to Dismiss**

Defendants assert that this action should be dismissed for failing to state a claim as to Midland States Bancorp, Inc. because that entity was not party to the Construction Loan Agreement and thus "could not have breached the contract or violated any unfair trade practices laws."[46]  Baxter consents to dismissal, stating that it accepts Defendants' representation that MSB has capacity to sue and be sued in its own name.[47]  Thus, the Court will grant Defendants' motion to dismiss Midland States Bancorp, Inc.

**II.     Motion to Transfer Venue**

Defendants assert that this action is eligible for the transfer they seek because it could originally have been brought in the Southern District of Illinois.[48] The Court agrees; venue would be appropriate in that district because Defendants both reside there,[49] the district would have subject matter jurisdiction over the dispute because it is between "citizens of different states" and the matter in

---

[46] Docket 16-1 at 31.

[47] Docket 20 at 35.

[48] *See* Docket 16-1 at 18–19 (Defs.' Mem. in Support of Their Mot. to Transfer Venue & Def. Midland States Bancorp, Inc.'s Mot. to Dismiss).

[49] *See* 28 U.S.C. § 1391(b)(1) (providing that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located").
Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 11 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 11 of 19

controversy exceeds $75,000,[50] and the district could exercise personal jurisdiction over Defendants.[51] Thus, the Court will consider whether transfer is appropriate by weighing the ten factors articulated by the Ninth Circuit in *Jones v. GNC Franchising, Inc.* The Court addresses each in turn.

***1. Location Where Relevant Agreements Were Negotiated and Executed.*** The Court finds that Factor 1 is neutral because the Construction Loan Agreement, which forms the primary basis of the parties' dispute, was negotiated and executed electronically by individuals located in both Alaska and Illinois. While Defendants are correct that the Dwight Capital Agreement, negotiated partially in Illinois and partially in New York, has some relevance to Baxter's claims,[52] that agreement is only relevant insofar as it may have affected Love Funding's ability to originate loans. Resolving the parties' dispute in this regard will not necessarily require discovery related to the Dwight Capital Agreement because, as Defendants acknowledge, "[MSB] is competent to discuss the current operations of its own subsidiary."[53] Thus, the Court finds the Construction Loan Agreement to be the proper basis for this factor and does not heavily weigh where the Dwight Capital Agreement was negotiated and executed.

---

[50] *See id.* § 1332(a).

[51] *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

[52] *See* Docket 16-1 at 22; Docket 26 at 5.

[53] Docket 26 at 6.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 12 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 12 of 19

***2. Familiarity with Governing Law.*** The Court finds that Factor 2 weighs slightly in favor of transfer. Due to the Construction Loan Agreement's choice-of-law provision, this dispute will be governed by Illinois law, with which the Southern District of Illinois is more familiar.[54] As Defendants highlight, Alaska contract law and Illinois contract law are not identical; Alaska courts may consider extrinsic evidence regarding the reasonable expectations of the parties even if the disputed contract provision is not ambiguous on its face, whereas Illinois courts will not consider extrinsic evidence when the disputed provision is unambiguous.[55] However, this factor weighs only slightly in favor of transfer because this action presents relatively straightforward questions of contract interpretation.[56]

---

[54] Assuming *arguendo* that Baxter can plead a violation of Alaska's UTPA despite the Construction Loan Agreement's choice-of-law provision, the Court still finds that Factor 2 weighs slightly in favor of transfer. As Defendants note, Alaska's UTPA is modeled on the Uniform Deceptive Trade Practices Act, which Illinois has also adopted, and Alaska and Illinois law thus define the terms relevant to Baxter's UTPA claim in the same manner. *See Brady v. E&Y Dev., Inc.*, Case No. 3:07-cv-00245-TMB, 2010 WL 11527005, at *2 (D. Alaska Aug. 26, 2010); 815 Ill. Comp. Stat. 510.

[55] *Compare Flint Hills Res. Alaska, LLC v. Williams Alaska Petroleum, Inc.*, 377 P.3d 959, 975 (Alaska 2016), *with Lobo IV, LLC v. V Land Chi. Canal, LLC*, 138 N.E.3d 824, 846 (Ill. Ct. App. 2019).

[56] *See Done! Ventures, LLC v. Gen. Elec. Co.*, Case No. 10-cv-04420-SJO, 2011 WL 13217220, at *8 (C.D. Cal. Jan. 21, 2011) ("[T]he fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer . . . especially in an instance such as this where no complex questions of foreign law are involved." (second alteration in original) (quoting *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980))).

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 13 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 13 of 19

***3. Plaintiff's Choice of Forum.*** Factor 3 weighs heavily against transfer because Baxter's choice of its home forum, the District of Alaska, is entitled to particularly strong deference.[57]

***4. Parties' Contacts with the Forum.*** Factor 4 is neutral as Baxter does not have ongoing contacts with Illinois, and Defendants do not have ongoing contacts with Alaska, apart from the present dispute.[58]

***5. Contacts Related to Action in Chosen Forum.*** The Court finds that Factor 5 is also neutral, as there were contacts related to this action in both Alaska and Illinois.

***6. Differences in Cost of Litigation.*** The Court finds that Factor 6 is either neutral or weighs slightly against transfer. Neither of the two fora is significantly more convenient to the parties and witnesses in terms of travel time and expenses. If the case remains in this district, a number of witnesses may need to travel to Alaska from Illinois, New York, and Washington, D.C. Conversely, if the case is transferred to Illinois, a number of Baxter's witnesses would need to travel there from Alaska, and the witnesses from New York and Washington, D.C. would still need to travel a substantial distance. Further, as Baxter notes, Defendants' litigation counsel is located in Chicago, and Richard Kantor, the Director of Commercial Banking at MSB, is located in Arkansas—thus, both would need to

---

[57] *See Global Commodities Trading Grp.*, 972 F.3d at 1112.

[58] *See* Docket 16-1 at 13, 24–25; Docket 20 at 19.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 14 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 14 of 19

travel even if this action is transferred to the Southern District of Illinois.[59] Moreover, to the extent the parties' relative financial ability "is a relevant consideration" for this factor,[60] it appears that litigating in a distant forum would be more costly for Baxter than for Defendants given that Baxter is "a relatively small entity, which [has] sold its sole asset (the senior living facility)" and "remains in business solely to conduct dissolution related activities, including the litigation of this matter, and to divide remaining assets among its investors."[61]

**7. Availability of Compulsory Process.** The Court finds that Factor 7 is neutral because there will be several non-party witnesses outside the court's subpoena power regardless of whether the action is transferred. Both this Court and the Southern District of Illinois have the power to subpoena non-party witnesses; however, that power only extends outside the respective districts if the place of the relevant trial, hearing, or deposition is "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[62] Here, the parties have each identified several potential non-party witnesses.[63]

---

[59] *See* Docket 16-2 at 1, ¶ 1 (stating that Mr. Kantor works remotely in Arkansas); Docket 20 at 24.

[60] *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008).

[61] Docket 20 at 23–24.

[62] Fed. R. Civ. P. 45(c)(1)(A).

[63] The parties challenge the relevance of each other's non-party witnesses. *See* Docket 26 at 13–14 (asserting that Baxter's president, Walter J. Wilcox, can provide testimony on the subjects that Baxter has identified for the testimony of third-party witnesses); Docket 20 at 21–

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 15 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 15 of 19

Defendants have identified: (1) Jon Camps, the former President of Love Funding, who resides in Washington, D.C.; (2) Brent Frank, the Senior Director of Originations at Dwight Capital, who resides in Chicago, Illinois; and (3) Holly Bray, a former Senior Director at Love Funding, who resides near Washington, D.C.[64] Baxter has identified: (1) Stacy Tomuro, a representative from FNBA, who resides in Alaska; (2) Joanie Suzuki, one of Baxter's former Senior Living Advisors, who resides in Alaska; (3) Karla Cen, another former Senior Living Advisor, who "[u]pon information and belief resides in Pennsylvania"; and (4) Keith Rayl, a former Baxter employee and the general manager of the senior living facility, who resides in Alaska.[65] Thus, if this action remains in Alaska, compulsory process will not be available for Mr. Camps, Mr. Frank, Ms. Bray, or Ms. Cen. If the action is transferred to Illinois, compulsory process will not be available for Mr. Camps, Ms. Bray, Mr. Tomuro, Ms. Suzuki, Ms. Cen, or Mr. Rayl.

***8. Ease of Access to Sources of Proof.*** The Court finds that Factor 8 is neutral because the dispute appears likely to focus almost entirely on electronically

---

22, 25–26 (disputing relevance of potential third-party witnesses identified by MSB for testimony regarding Love Funding's sale to Dwight Capital). For purposes of considering the instant motion, the Court will assume that all the non-party witnesses identified are relevant.

[64] Docket 16-1 at 15–16.

[65] Docket 20 at 20–21, 26 & n.4.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 16 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 16 of 19

available business records and contracts, which can easily be accessed in either district.[66]

**9. Forum Selection Clause.** The parties agree that this factor is neutral because the Construction Loan Agreement permits lawsuits to be filed in federal and state courts in both Alaska and Illinois.[67]

**10. Relevant public policy of the forum state.** The Court finds that Factor 10 is neutral. While Baxter is correct that "Alaska courts have a vested public interest in resolving suits involving its citizens,"[68] Illinois courts also have an interest in resolving suits involving the state's corporations. Even if the Court assumes that the Construction Loan Agreement's choice-of-law provision does not preclude Baxter's UTPA claim, Alaska's interest in resolving claims under its UTPA is matched by Illinois's interest in resolving disputes governed by its contract law.

**Other factors.** Because the ten factors discussed above are nonexclusive, the Court may consider other factors in evaluating whether transfer if appropriate. Here, the parties focused their arguments in this regard on the import of the parallel Illinois action.[69] Defendants' contention that the pendency of the Illinois action

---

[66] *See Brackett*, 619 F. Supp. 2d at 820 ("Given technological advances in document storage and retrieval, transporting documents between districts does not generally create a burden.").

[67] *See* Docket 6-1 at 26–27, § 8.16; Docket 16 at 27–29; Docket 20 at 27–28.

[68] Docket 20 at 28.

[69] *See* Docket 16-1 at 28–30; Docket 20 at 29–35.

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 17 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 17 of 19

favors transfer can be disregarded, as that case has been dismissed.[70]  However, the Court agrees with the Southern District of Illinois court that Defendants' conduct in filing the Illinois suit is "concerning."[71]  Thus, the Court finds that the filing of the Illinois suit weighs against transfer because it is "in the interest of justice" to discourage anticipatory filings.

***Balancing of the factors.***  In sum, the majority of the venue factors either favor venue in Alaska or are neutral.  While litigating in Alaska may be inconvenient for Defendants and some witnesses, transferring the action to Illinois "would merely shift rather than eliminate the inconvenience," creating inconvenience for Baxter and other witnesses.[72]  Thus, Defendants have failed to make a sufficiently strong showing of inconvenience to warrant upsetting Baxter's choice of its home forum.[73]  The Court finds that transfer to the Southern District of Illinois is not in the interest of justice and is not warranted based on convenience to the parties or witnesses.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' motion to transfer venue to the Southern District of Illinois is DENIED.  IT IS FURTHER

---

[70] *See Midland States Bank*, 2022 WL 1773770, at *3.

[71] *Id.*

[72] *Decker Coal Co.*, 805 F.2d at 843.

[73] *See Decker Coal Co.*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 18 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 18 of 19

ORDERED that Defendants' motion to dismiss Midland States Bancorp, Inc. is GRANTED.  Accordingly, Defendants' motion at Docket 16 is GRANTED in part and DENIED in part.  The case caption will be amended to delete Midland States Bancorp, Inc.

DATED this 24 day of June, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:21-cv-00273-SLG, *Baxter Senior Living, LLC v. Midland States Bancorp, Inc., et al.*
Order re: Motion to Transfer Venue and Motion to Dismiss
Page 19 of 19
Case 3:21-cv-00273-SLG   Document 29   Filed 06/24/22   Page 19 of 19